Ernest Dunphy  
vs.  
Industrial Trust Company et al.  } Eq. No. 11008.

August 1, 1933.

BAKER, P. J. Heard on bill, answer and proof.

In this case the complainant is seeking to establish his right to the proceeds of certain insurance policies upon the life of one Elizabeth Buss, now deceased, and also his right to a bank account in the sum of upwards of $5,350 standing in her name at the time of her death.

There are two principal prayers for relief in his bill; first, that he be declared the owner of the money and choses in action in question, and second, that said money and choses in action be subjected to a trust for the benefit of his interest therein.

The complainant's first contention is that the insurance policies and the bank account in question were given to him by Miss Buss shortly before her death. His other claim is that a portion of the money in the bank account properly belongs to him because it was his money and he gave it to Miss Buss for her to deposit, having in view a contemplated marriage between the parties.

Two of the respondents, brothers of the deceased, vigorously contest the complainant's claims and urge that the moneys and choses in action in question properly belong to the administrator of her estate.

The evidence discloses that the complainant and Miss Buss were on very friendly terms for approximately twenty years and that, for about ten years prior to her death, the parties had been virtually engaged to be married. For many years the deceased lived with her father and with a friend who is now Mrs. Burns. They all worked and the money earned was turned into the Buss household. About 1926 Mrs. Burns married and left. About the same time Mr. Buss, whose health had been failing, ceased work. He died in June, 1929. After that date Miss Buss broke up her home and boarded until her own death. In the summer of 1930, she was severely injured in an automobile accident in Hudson, New York, which necessitated hospital treatment for some considerable period and prevented her working until the fall of that year. The complainant and Miss Buss apparently contemplated marriage on the 26th of June, 1931, and a license had been procured. On the 25th of June of that year, she was taken very seriously ill and was removed to a hospital in Pawtucket. An operation was performed the following day and on June 28th she died.

The evidence further shows that the complainant has worked for a considerable number of years as a salesman and also, since about 1920, has owned property at Clark's point in North Kingstown. This property consists of a number of small cottages which he rents, chiefly in the summer. He also is engaged at this place in the renting of boats and the carrying on of some fishing, from which an income is derived.

The first question to be passed upon by the Court is whether or not any gift was made to the complainant by Miss Buss of the bank account and insurance policies involved herein.

The complainant testified in substance that he called on Miss Buss at her rooming house, when he learned

she was sick, on the afternoon of June 25th, 1931; that Miss Buss was then quite ill and taking medicine; that after some talk, at her request he took her key and opened a cedar chest which was in the room, she having previously told him where the key was. At her further request, he brought her the bank books and an envelope with the insurance policies; tnat these were given to him by Miss Buss and placed in his pocket, and that the chest was afterwards locked. The policies were not endorsed and no signed order to the bank was given by Miss Buss to the complainant. He claims Miss Buss told him in substance to hold onto the insurance policies and bank books and let no one have them, and made the statement that most of the money was the complainant's anyway.

There is no question but that bank books and policies can be given in such a way as to pass the complete property in them to the donee. Our Court, in several cases, has considered this general point.

Tillinghast vs. Wheaton, 8 R. I. 536;

Providence Institution for Savings vs. Taft, 14 R. I. 502;

Hopkins vs. Manchester, 16 R. I. 663;

Talbot vs. Talbot, 32 R. I. 72.

It is clear, however, that the determination of the question as to whether there has been a valid gift must depend upon the facts and circumstances of each individual case. It is undoubtedly true that the testimony on the whole might show a reason for making such a gift as the complainant claims. The latter and Miss Buss were obviously very friendly and for many years she had frequently visited his place at Clark's Point and often stayed for some periods of time. When she was injured in the automobile accident, the complainant went to Hudson, New York, and made arrangements for her care. Her own family did not visit her there. After she became well enough to leave the hospital, she went to complainant's place at Clark's Point to recuperate. His mother also helped to care for Miss Buss' father when he was ill.

The Court is inclined on the whole to believe that Miss Buss was probably more intimate with the complainant and his family than with her own brothers. At the same time, the Court cannot find, as the complainant is inclined to argue, that there was any estrangement or difficulty between Miss Buss and the other members of her own family. The Court feels that while, perhaps, the testimony does not reveal great intimacy, nevertheless it shows the usual friendly feeling between a sister and brothers who have lived apart for some years.

After carefully considering all the evidence surrounding the alleged gift, the Court has come to the conclusion that the complainant has not sustained the burden of proof necessary to establish the making of the gift in question. There are several reasons for this finding.

In the first place, it is not clear whether the complainant contends the gift to be a gift inter vivos or a gift causa mortis. It appears clearly in cross-examination of the complainant that at the time the alleged gift was supposed to have been made, there was no talk about Miss Buss going to the hospital nor was there any conversation about the seriousness of her illness or about her being near death. She was not taken to the hospital until several hours later during the evening of the day in question.

The evidence in the judgment of the Court shows plainly that if any gift was made, it was not in anticipation of death and cannot be considered a gift causa mortis.

Vol. 28 Corpus Juris, p. 622.

Further, in cross-examination the complainant testified that he was to have the policies and bank books if anything happened to Miss Buss. In other words, if any gift took place, it would appear to be conditional and, under the evidence, cannot be considered a direct gift inter vivos taking effect at once. The testimony discloses that at the time the talk took place between the complainant and Miss Buss, a woman was sitting in the next room and between the rooms the door was open. Apparently this person was not called upon to witness the alleged transaction of passing over the insurance policies and bank books, and neither has she been called as a witness in this proceeding by either side.

Further, on the next day in the hospital, in talking to two of the doctors, Miss Buss apparently made the unqualified statement that she could afford private care, that she desired to be a private patient and that she had money in the bank to meet necessary expenses. It is true that possibly one of the doctors so testifying is somewhat interested because he has not been paid for performing the operation on Miss Buss, but the other doctor, who was at that time an interne in the hospital, obviously has no interest of any kind in this proceeding. The Court feels that the evidence of these physicians is reliable and that it is extremely unlikely that Miss Buss would make statements of this character if she had the afternoon before practically stripped herself of most of her possessions. It is undisputed that after Miss Buss died on Sunday, June 28th, late on the evening of that day the complainant with his nephew went to her rooming house and took from her room her cedar chest and certain other of her belongings, and that he is still in possession of these articles. The Court is of the opinion that it was in this manner that the complainant came into possession of the bank books and insurance policies, rather than by the alleged gift on the afternoon of June 25th.

The next question to be determined is whether or not the complainant is entitled to any beneficial interest in the bank account. In support of his claim that he from time to time paid Miss Buss money which she deposited in her account, the complainant has presented the testimony of his sister, his nephew, another young man and a young girl. All of these witnesses gave evidence that they saw the complainant from time to time give money to Miss Buss but they also all admit that they are very friendly with the complainant and are interested in seeing him succeed in this proceeding.

The bank account in question was opened in November, 1911, in the name of Henry or Elizabeth Buss or the survivor of them, Henry being Miss Buss' father. It is admitted that the complainant made no contribution to this account prior to 1920 and that at that time there was a balance of $1,000 in the account which clearly belonged to Miss Buss and her father and in which the complainant had no interest. The complainant testifies that in February, 1920, he gave Miss Buss $150, which appears to have been deposited. This is the only definite date and amount which the complainant testifies to. His evidence is that at periods which he cannot fix, but frequently at Clark's Point, he turned over money to Miss Buss which she deposited in this account. He tells the Court that part of the money came from the fishing and the boat business. If money was received by Miss Buss in this manner, she apparently did not deposit it as soon as received but only from time to time and in more or less substantial amounts. The complainant contends that this situation continued until June, 1929, when Miss Buss' father died. He claims that then was the first time he knew the account was a

joint account between Miss Buss and her father and that his own name did not appear on the book in any way. He says that he had implicit faith in Miss Buss and did not question her about the account. After her father's death, the complainant says that Miss Buss said she would have the account straightened out so that his name would appear but that he made no attempt to check up on this. A new book was issued January 22, 1931, in the name of Elizabeth Buss alone and the account stood in that manner until her death.

It appears clearly in evidence that the complainant was familiar with bank accounts. In fact, he had several of his own during the period in question in which he was making deposits. The evidence is somewhat in conflict as to the family arrangement of the Busses. It is quite clear that Miss Buss, her father, and the young woman who was living with them, pooled their earnings over a period of many years and that some of the savings went into the bank account in question in its early stages. There is a conflict on the evidence as to whether the money was handled by Miss Buss or her father. The Court on the whole is inclined to believe that Miss Buss attended to most of the financial transactions. She apparently was a quiet, careful, saving woman, who spent little on outside interests and was well qualified to be the manager of the household.

The complainant testified that at the time Mr. Buss died, he and Miss Buss had some talk about the account with reference to how much "we" had in the bank, and that she made the statement in substance that he had about three times as much as she had.

An examination of the bank books themselves reveals that beyond any dispute the complainant can have no claim as to certain of the items in the account. The evidence would tend to show clearly that the deposit of $330 made on July 2, 1929, was part of the proceeds of Miss Buss' father's life insurance policies. Also a deposit of $235 on September 17, 1929, would seem to come from certain insurance policies of her own which Miss Buss turned in. The large deposit of $2,345.58 made on January 22, 1931, represents what Miss Buss received from the automobile accident above referred to, together with, possibly, certain accumulated pay or wages from the mill in which she worked. Also, interest on the account amounts to over $400.

The bank books tend to show that the total deposits between February, 1920, and the date of Mr. Buss' death in June, 1929, amount to about $1,379.36. Other deposits not otherwise accounted for since that date, when the complainant had full knowledge of the state of the account, would bring the total deposits up to something over $2,000. If the complainant has any claim, it must be to a portion of this amount. The respondents are not in a position to directly controvert the complainant's claim in this connection but placed on the stand several witnesses to question the probability of the situation. Several of these witnesses, however, such as Miss Buss' brother and his wife, are, of course, more or less interested in the outcome of the litigation.

In view of the very close and friendly relations existing between the complainant and Miss Buss over a period of years, and in view of the contemplated marriage and the obvious feeling of trust between them, the Court cannot say that the complainant's testimony that he from time to time gave Miss Buss money to be placed in a common fund is unreasonable.

The Court on all the evidence presented has come to the conclusion that the complainant is entitled to a beneficial interest in the nature of a trust in the bank account involved herein. The amount of this beneficial interest

the Court places at the sum of $1,000, which it believes will do substantial justice between the parties.

The complainant's prayers for relief are granted to this extent but no further. A decree may be entered in accordance herewith.

For complainant: Messrs. Bennett, Fitzpatrick & Cook, James J. Fogarty, Jr.

For respondents: Messrs. Huddy & Moulton, L. F. Nolan.

